IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN ACADEMY OF PEDIATRICS, *Plaintiff*, v. U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, *Defendants*. | Case No. 1:25-cv-4505 |

**DECLARATION OF MARK DEL MONTE**

I, Mark Del Monte, declare as follows:

1. I am the Chief Executive Officer/Executive Vice President of the American Academy of Pediatrics (AAP). I have held that position since September 2019 and have been an employee of AAP since 2005.

2. I completed my law degree from the University of California, Berkeley – School of Law in 1997.

3. I am over eighteen years old and have personal knowledge of the facts and information in this declaration. I respectfully provide this declaration to offer context regarding AAP's child health advocacy and the hostile response to that advocacy from Secretary of Health and Human Services Robert F. Kennedy, Jr. and his allies, as well as to detail the devastating effects that the abrupt termination of AAP awards administered by the Centers for Disease Control and Prevention (CDC) and the Health Resources and Services Administration (HRSA) will have on AAP.

4. AAP's mission is to attain optimal physical, mental, and social health and well-being for all infants, children, adolescents, and young adults. AAP is committed to advancing child health and well-being and the profession of pediatrics.

5. To advance this mission, AAP educates the public on issues of child health. It also identifies the expert consensus among its members on important child health matters and advocates for that position. This requires AAP to speak out publicly about the importance of vaccinations, both for the vaccinated individuals and for immunity levels among the population generally, and to respond publicly to efforts by the administration to create confusion about vaccines that have been proven to be safe and effective. Our public positions on vaccinations are based on established science and the consensus of AAP members.

6. AAP has been consistently vocal about its support for pediatric

vaccinations for COVID-19, influenza, MMRV, RSV, hepatitis B, and others, and has publicly opposed the contradictory positions of the Department of Health and Human Services (HHS). Those contradictory positions are not supported by science, and AAP has determined they will be harmful to children and youths.

7. Since Secretary Kennedy fired the 17 sitting members of the CDC's Advisory Committee on Immunization Practices (ACIP), for example, ACIP has demonstrated its distrust of vaccines and voted to no longer recommend certain vaccinations for certain populations. AAP nevertheless has continued to recommend COVID-19, hepatitis B, and other vaccines that ACIP no longer widely recommended. For the first time in 30 years, AAP shared vaccine recommendations that differ from the federal government's guidance. And AAP has consistently spoken out against the administration's anti-vaccine views that depart from the generally accepted scientific consensus.

8. AAP has issued a number of public statements in 2025 to this effect. For example, Sean O'Leary, a physician who heads the AAP's infectious-diseases committee, said in response to HHS's COVID-19 vaccine policy: "The majority of what we've seen from the secretary has been a pretty clearly orchestrated strategy to sow distrust in vaccines. We make our recommendations based on what's in the best interest of the health of children." These statements have prompted a hostile reaction from Secretary Kennedy and his allies, including threats to funding provided to AAP by the HHS.

9. Similarly, AAP has consistently supported access to gender-affirming care, a determination that is also based on the consensus of its experts. *See, e.g.*, Alyson Sulaski Wyckoff, *AAP reaffirms gender-affirming care policy, authorizes systematic review of evidence to guide update*, Am. Acad. of Pediatrics, (Aug. 4, 2023), https://perma.cc/V39Q-72B4. AAP has publicly opposed HHS's contradictory positions. AAP recently publicly criticized HHS's report seeking to discredit gender-affirming medical care, explaining that AAP "oppos[es] [HHS's] infringements on the patient-

physician relationship." Melissa Jenco, *AAP speaks out against HHS report on gender dysphoria, infringement on physician-patient relationship*, Am. Acad. of Pediatrics, (May 1, 2025), https://perma.cc/4W3E-2WN5.

10. On December 16 and 17, 2025, AAP received abrupt termination notices for three CDC awards and four HRSA awards. As detailed in the accompanying declaration of Debra B. Waldron, those award terminations will have catastrophic effects on public health.

11. The award terminations will also have a devastating impact on AAP as an organization and will significantly impair our ability to carry out our mission.

12. If the awards at issue are not reinstated by January 9, 2026, AAP will be forced to send termination notices to several dozen employees who are directly or indirectly compensated by these awards. That constitutes approximately 10% of our workforce.

13. Those employees administer and operationalize the projects funded by the awards, provide fiscal management of the awards, and focus their day-to-day activities on managing the projects.

14. If AAP is forced to terminate employees supporting these awards now, we will be irreparably harmed even if we later prevail and have the awards reinstated because those terminated employees will no longer be able to work on the awards. We will lose subject-matter experts, talent, experience, and intellectual property related to these awards—which cover, among other things, programs related to reducing sudden unexplained infant death, supporting children with birth defects, and improving access to rural health care. If we later prevail, we will likely not be able to recoup that talent or intellectual property.

15. AAP is currently spending approximately $116,500 per week on employee salaries and benefits and indirect costs that were previously covered by the awards. AAP lacks the resources to continue making these payments past January 9, 2026.

16.     If AAP is forced to terminate employees, we will have to reimburse the state of Illinois for unemployment compensation benefits, with maximum potential costs in the range of $14,092 to $19,292 per employee. These unemployment compensation benefits are not recoupable even if the awards are later reinstated.

17.     If AAP is forced to terminate employees, state law requires that we pay out their earned but unused vacation time. This amount is not recoupable even if the awards are later reinstated.

18.     AAP does not have another source of grant funds available to save the projects funded by the terminated awards. AAP could not reallocate funds for these projects without further reducing resources for other programs and, in turn, putting those programs at risk.

I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this 24th day of December 2025 in Itasca, Illinois.

*[signature]*
Mark Del Monte

4