UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN ACADEMY OF PEDIATRICS,

              Plaintiff,

      v.

DEPARTMENT OF HEALTH AND HUMAN
SERVICES, et al.,

              Defendants.

Civil Action No. 25-4505 (BAH)

**MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

Table of Contents ......................................................................................................... i

Table of Authorities ..................................................................................................... ii

Background ................................................................................................................... 2

      A.    Legal Framework for Terminating Grants. ................................................ 2

      B.    Factual Allegations .................................................................................... 3

Legal Standard ............................................................................................................. 6

Argument ...................................................................................................................... 8

    I.    Plaintiff is Unlikely to Succeed on the Merits. ........................................... 8

      A.    The Court Lacks Subject-Matter Jurisdiction to Grant the Monetary Relief Plaintiff Seeks. ............................................................ 8

      B.    Plaintiff's First Amendment Claim Fails. ............................................... 15

    II.    Plaintiff Has Not Established Irreparable Harm. ........................................ 25

    III.    The Balance of the Equities and the Public Interest Weigh Against Granting Preliminary Relief. ........................................................................ 31

    IV.    Any Preliminary Injunction Should Be Stayed. ........................................ 32

    V.    The Court Should Order that Plaintiffs Post a Bond as a Condition of Preliminary Relief. ..................................................................................... 32

Conclusion ................................................................................................................. 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. State of Iowa*,
  19 F.4th 1045 (8th Cir. 2021) .................................................................. 20

*Acosta v. Dist. of Columbia Gov't*,
  Civ. A. No. 20-1189 (RC), 2020 WL 2934820 (D.D.C. Jun. 3, 2020).................................... 27

*Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the U.S.*,
  840 F. Supp. 2d 327 (D.D.C. 2012) ......................................................... 28

*Am. Ass'n of Physics Teachers, Inc. v. Nat'l Sci. Found.*,
  --- F. Supp. 3d ---, Civ. A. No. 25-1932 (JMC), 2025 WL 2615054 (D.D.C. Sep. 10, 2025) .. 8,
  11, 15

*American Bar Association v. Department of Justice*,
  783 F. Supp. 3d 236 (D.D.C. 2025) ....................................................... 11, 12, 17, 18

*Arbaugh v. Y&H Corp.*,
  546 U.S. 500 (2006)................................................................................. 1, 15

*Aref v. Holder*,
  774 F. Supp. 2d 147 (D.D.C. 2011) ............................................................ 16

*Aviles-Wynkoop v. Neal*,
  978 F. Supp. 2d 15 (D.D.C. 2013) ............................................................. 26

*Bailey v. Fed. Bureau of Prisons*,
  780 F. Supp. 3d 96 (D.D.C. 2025) ............................................................. 25

*Bd. of Cnty. Commissioners, Wabaunsee Cnty., Kansas v. Umbehr*,
  518 U.S. 668 (1996)................................................................................. 21

*Benisek v. Lamone*,
  585 U.S. 155 (2018)................................................................................. 7

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988)............................................................................. 12, 13, 15

* *Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006) ............................................................. 6, 25, 26, 27

*CityFed Fin. Corp. v. Office of Thrift Supervision*,
  58 F.3d 738 (D.C. Cir. 1995) .................................................................... 7

*Clark v. Libr. of Cong.*,
  750 F.2d 89 (D.C. Cir. 1984) ...................................................................... 9

*Clevinger v. Advoc. Holdings, Inc.*,
  134 F.4th 1230 (D.C. Cir. 2024) ............................................................... 25

*Comm. on Ways & Means v. Dep't of Treas.*,
  45 F.4th 324 (D.C. Cir. 2022) ................................................................... 16

*Cornish v. Dudas*,
  540 F. Supp. 2d 61 (D.D.C. 2008) ............................................................ 26

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
  38 F.4th 1099 (D.C. Cir. 2022) ................................................................. 11

*Damus v. Nielsen*,
  Civ. A. No. 18-0578 (JEB), 2018 WL 3232515 (D.D.C. July 2, 2018) .................. 6

*Davis v. Billington*,
  76 F. Supp. 3d 59 (D.D.C. 2014) ............................................................... 29

*Davis v. FEC*,
  554 U.S. 724 (2008) ..................................................................................... 8

*Davis v. Pension Ben. Guar. Corp.*,
  571 F.3d 1288 (D.C. Cir. 2009) .................................................................. 7

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,
  601 U.S. 42 (2024) ....................................................................................... 9

* *Dep't of Educ. v. California*,
  604 U.S. 650 (2025) .................................................................. 9, 11, 14, 31

*Doe v. District of Columbia*,
  796 F.3d 96 (D.C. Cir. 2015) ..................................................................... 16

*Farris v. Rice*,
  453 F. Supp. 2d 76 (D.D.C. 2006) .............................................................. 7

* *Wisc. Gas Co.* v. FERC,
  758 F.2d 669 (D.C. Cir. 1985) ................................................................... 29

*George v. Molson Coors Beverage Co. USA, LLC*,
  No. 22-7111, 2023 WL 2661588 (D.C. Cir. Mar. 28, 2023) ................................................. 19

\* *Great-West Life & Annuity Insurance Co. v. Knudson*,
  534 U.S. 204 (2002) ................................................................................... 12, 13, 15

\* *Hanson v. Dist. of Columbia*,
  120 F.4th 223 (D.C. Cir. 2024) ................................................................................. 26

*Hartman v. Moore*,
  547 U.S. 250 (2006) ........................................................................................ 24

*Hawkins v. PepsiCo, Inc.*,
  203 F.3d 274 (4th Cir. 2000) ................................................................................. 24

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ........................................................................................ 31

*Hometown Connections v. Noem*,
  Civ. A. No. 25-0885, 2025 WL 1103253 (D. Md. Apr. 14, 2025) ......................................... 10

*Houston Cmty. Coll. Sys. v. Wilson*,
  595 U.S. 468 (2022) ........................................................................................ 24

*Hudson v. Norris*,
  227 F.3d 1047 (8th Cir. 2000) ................................................................................. 19

*Ingersoll-Rand Co. v. United States*,
  780 F.2d 74 (1985) ..................................................................................... 10, 11

*Int'l Eng'g Co., Div. of A-T-O, Inc. v. Richardson*,
  512 F.2d 573 (D.C. Cir. 1975) ................................................................................. 10

\* *Jibril v. Mayorkas*,
  101 F.4th 857 (D.C. Cir. 2024) ................................................................................. 15

*John Doe Co. v. CFPB*,
  849 F.3d 1129 (D.C. Cir. 2017) ................................................................................. 28

*Johnson v. Panetta*,
  953 F. Supp. 2d 244 (D.D.C. 2013) ....................................................................... 15, 17

*Kim v. FINRA*,
  698 F. Supp. 3d 147 (D.D.C. 2023) ........................................................................... 31

*Kimel v. Florida Bd. of Regents*,
　　528 U.S. 62 (2000) ........................................................................................ 9

*League of Women Voters of U.S. v. Newby*,
　　838 F.3d 1 (D.C. Cir. 2016) ......................................................................... 8

*Leek v. Miller*,
　　698 F. App'x 922 (10th Cir. 2017) ............................................................ 20

*Lujan v. Defs. of Wildlife*,
　　504 U.S. 555 (1992) ...................................................................................... 8

*McNeil v. Brown*,
　　No. 19-5093, 2022 WL 4086726 (D.C. Cir. Sep. 2, 2022) ......................... 8

*Media Matters v. Federal Trade Commission*,
　　No. 25-5302, 2025 WL 2988966 (D.C. Cir. Oct. 23, 2025) ................. 20, 21

* *Megapulse, Inc. v. Lewis*,
　　672 F.2d 959 (D.C. Cir. 1982) ......................................................... 9, 10, 14

*Mt. Healthy Cty. v. Doyle.*,
　　429 U.S. 274 (1977) .................................................................................... 24

*Nat'l Min. Ass'n v. Jackson*,
　　768 F. Supp. 2d 34 (D.D.C. 2011) ............................................................ 29

*Nat'l Rifle Ass'n of Am. v. Vullo*,
　　602 U.S. 175 (2024) .................................................................................... 24

*Newdow v. Roberts*,
　　603 F.3d 1002 (D.C. Cir. 2010) .................................................................. 8

* *NIH v. Am. Pub. Health Ass'n*,
　　145 S. Ct. 2658 (2025) ................................................................... 9, 11, 14, 31

*Nieves v. Bartlett*,
　　587 U.S. 391 (2019) ............................................................................... 16, 18

*Nken v. Holder*,
　　556 U.S. 418 (2009) .................................................................................... 31

*Owlfeather-Gorbey v. Avery*,
　　119 F.4th 78 (D.C. Cir. 2024) .................................................................... 16

*Pantoja v. Martinez,*
  No. 21-7118, 2022 WL 893017 (D.C. Cir. 2022) .................................................... 7

*Perry v. Clinton,*
  831 F. Supp. 2d 1 (D.D.C. 2011) ............................................................................ 23

*Planned Parenthood of Greater New York v. HHS,*
  Civ. A. No. 25-2453 (BAH), 2025 WL 2840318 (D.D.C. Oct. 7, 2025) .......................... 27, 28

*Pro. Plant Growers Ass'n v. Dep't of Agric., Animal & Plant Health Inspection Serv.,*
  879 F. Supp. 130 (D.D.C. 1995) ............................................................................ 30

*Raines v. Dep't of Just.,*
  424 F. Supp. 2d 60 (D.D.C. 2006) ................................................................ 14, 16, 27

*Richards v. Delta Air Lines, Inc.,*
  453 F.3d 525 (D.C. Cir. 2006) ........................................................................ 13, 15

*Robinson v. Farley,*
  364 F. Supp. 3d 154 (D.D.C. 2017) ........................................................................ 14

*Santos v. Collins,*
  Civ. A. No. 24-1759 (JDB), 2025 WL 1823471 (D.D.C. Feb. 26, 2025) ...................... 25, 26

*Scottsdale Capital Advisors Corp. v. Fin. Indus. Regul. Auth. Inc.,* 678 F. Supp. 3d 88 (D.D.C.
  2023) ............................................................................................................ 6

*Shapiro v. Dep't of Agric.,*
  Civ. A. No. 25-8, 2025 WL 3473291 (M.D. Pa. Dec. 3, 2025) ...................................... 3

*Shuler v. Dicks,*
  Civ. A. No. 24-1292 (RDM), 2025 WL 894420 (D.D.C. Mar. 24, 2025) ........................ 18

*Singh v. Carter,*
  185 F. Supp. 3d 11 (D.D.C. 2016) .......................................................................... 27

* *Spectrum Leasing Corp. v. United States,*
  764 F.2d 891 (D.C. Cir. 1985) .................................................................... 8, 10, 11

* *Starbucks Corp. v. McKinney,*
  602 U.S. 339 (2024) ...................................................................................... 7, 27

*Storch v. Hegseth,*
  Civ. A. No 25-0415 (ACR), 2025 WL 2758238 (D.D.C. Sept. 24, 2025) ........................ 30

*Suburban Mortg. Assocs., Inc. v. Dep't of Hous. & Urb. Dev.*,
    480 F.3d 1116 (Fed. Cir. 2007) ............................................................. 11

*Talbott v. United States*,
    Civ. A. No. 25-0240, 2025 WL 842332 (D.D.C. Mar. 18, 2025) ............................................. 26

*Thorp v. District of Columbia*,
    317 F. Supp. 3d 74 (D.D.C. 2018) ......................................................... 21

*Trump v. Hawaii*,
    585 U.S. 667 (2018) ............................................................................. 19

*United States Ass'n of Reptile Keepers, Inc. v. Zinke*,
    852 F.3d 1131 (D.C. Cir. 2017) .............................................................. 7

*United States v. Chemical Found.*,
    272 U.S. 1 (1926) ................................................................................. 16

*United States v. Testan*,
    424 U.S. 392 (1976) .............................................................................. 9

*Urban Sustainability Directors Network v. USDA*,
    Civ. A. No. 25-1775 (BAH), 2025 WL 2374528 (D.D.C. Aug. 14, 2025) ............................. 24

*US Dominion v. MyPillow, Inc.*,
    Civ. A. No. 21-0445 (CJN), 2022 WL 1597420 (D.D.C. May 19, 2022) ............................. 21

*Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*,
    259 F.2d 921 (D.C. Cir. 1958) .............................................................. 28

*Vera Inst. of Just. v. Dep't of Just.*,
    --- F. Supp. 3d ---, Civ. A. No. 25-1643 (APM), 2025 WL 1865160 (D.D.C. Jul. 7, 2025) ....... 8

*Vatel v. All. of Auto. Mfrs.*,
    627 F.3d 1245 (D.C. Cir. 2011) ............................................................. 24

*Velikonja v. Mueller*,
    362 F. Supp. 2d 1 (D.D.C. 2004) ........................................................... 19

*Veterans Command, LLC v. United States*,
    Civ. A. No. 21-2018 (RJL), 2021 WL 4437694 (D.D.C. Sep. 14, 2021) ............................. 11

*Wiest v. Tyco Elecs. Corp.*,
    812 F.3d 319 (3d Cir. 2016) .................................................................. 23

*\* Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ............................................................................................. 6, 7, 27

**Statutes**

5 U.S.C. § 702 ........................................................................................................... 15

**Rules**

Fed. R. Civ. P. 65(c) ................................................................................................. 32

**Regulations**

2 C.F.R. § 200.340(a) ........................................................................................... passim

**Other Authorities**

*Guidance for Grants and Agreements*,
  85 Fed. Reg. 49,506 (Aug. 13, 2020) ...................................................................... 2

*Guidance for Federal Financial Assistance*,
  89 Fed. Reg. 30,046, 30,089 (Apr. 22, 2024) ..................................................... 2, 3

*Health and Human Services Adoption of the Uniform Administrative Requirements, Cost
  Principles, and Audit Requirements for Federal Awards,*
  89 Fed. Reg. 80,055, 80,055 (Oct. 2, 2024) ........................................................... 3

Defendants, the Department of Health and Human Services (the "Department"), its components the Centers for Disease Control and Prevention ("CDC"), the Health Resources and Service Administration ("HRSA"), and various Department officials (collectively, "Defendants"), respectfully submit this opposition to Plaintiff American Academy of Pediatrics' ("Plaintiff") motion for temporary restraining order or, in the alternative, preliminary injunction (ECF No. 2) in this grants termination case. For reasons discussed below, Plaintiff cannot establish entitlement to preliminary relief and its motion should be denied.

*First*, Plaintiff cannot show likelihood of success on the merits. Plaintiff asserts that the Department abruptly terminated seven CDC and HRSA grants in retaliation to Plaintiff's protected speech. In fact, the grants were terminated as part of CDC's and HRSA's reviews of grants and pursuant to 2 C.F.R. § 200.340(a) as incorporated into the terms of the grants. In any event, this Court is without jurisdiction to hear this case because the Tucker Act requires grant termination claims to be brought in the Court of Federal Claims. While Defendants do not contemporaneously move to dismiss, the Court nevertheless must dismiss this case if it finds jurisdiction lacking. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

*Second*, Plaintiff has failed to establish irreparable harm. Plaintiff alleges that it will be required to terminate about ten percent of its full-time work force. Even if true, such economic harm does not rise to the level of irreparable harm to the organization. Moreover, Plaintiff has not alleged—let alone established—that the grant terminations in any way inhibit its First Amendment speech. Any argument Plaintiff makes that alleged constitutional violations constituted per se irreparable harm fails as a matter of law.

Finally, the balance of the equities and the public interest counsel against issuing a preliminary injunction. The government and the public have a strong interest in allowing the

Department to conduct its review of existing grants and terminate those grants it determines do not

advance Department priorities, which Plaintiff does not challenge.

For these reasons, Defendants respectfully request that the Court deny Plaintiff's motion

for a temporary restraining order or, in the alternative, preliminary injunction (ECF No. 2).

## BACKGROUND

### A.    Legal Framework for Terminating Grants.

Pursuant to an August 13, 2020, final guidance, the Office of Management and Budget

revised 2 C.F.R. § 200.340(a) to allow for an agency to terminate a "Federal award . . . in whole

or in part" "if an award no longer effectuates the program goals or agency priorities." The purpose

of the changes to 2 C.F.R. § 200.340(a) was

> to strengthen the ability of the Federal awarding agency to terminate Federal
> awards, to the greatest extent authorized by law, when the Federal award no longer
> effectuates the program goals or Federal awarding agency priorities. . . . The intent
> of this change is to ensure that Federal awarding agencies prioritize ongoing
> support to Federal awards that meet program goals. For instance, following the
> issuance of a Federal award, if additional evidence reveals that a specific award
> objective is ineffective at achieving program goals, it may be in the government's
> interest to terminate the Federal award.

*Guidance for Grants and Agreements*, 85 Fed. Reg. 49,506, 49,509 (Aug. 13, 2020).

In 2024, the Office of Management and Budget relocated the relevant language to 2 C.F.R.

§ 200.340(a)(4). *See Guidance for Federal Financial Assistance*, 89 Fed. Reg. 30,046, 30,089

(Apr. 22, 2024). While commenters complained that the rule gave too much authority to agencies

to terminate grants, the Office of Management and Budget maintained the authority to terminate

grants that no longer effectuate agency priorities so long as notice of that authority is in the grant:

"Provided that the language is included in the terms and condition of the award, the revised

termination provision at section 200.340 continues to allow Federal agencies and pass-through

entities with authority to terminate an award in the circumstances described in paragraph (a)(2) in

the prior version of the guidance." *Id.* at 30,089–90; *see also Guidance for Federal Financial Assistance*, 89 Fed. Reg. 30,046; 2 C.F.R. § 200.211(c)(1)(v) ("Federal agencies must inform recipients of the termination provisions in § 200.340, including the applicable termination provisions in the Federal agency's regulations or terms and conditions of the Federal award.").

On October 2, 2024, the Department of Health and Human Services published an interim final rule that adopted the Office of Management and Budget's Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards. *Health and Human Services Adoption of the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards*, 89 Fed. Reg. 80,055, 80,055 (Oct 2. 2024); *see also* Ex. 1, Declaration of Jamie Legier ("Legier Decl.) ¶ 6 (attached hereto); Ex. 2, Declaration of Cynthia Baugh ("Baugh Decl.") ¶ 6.    Among the regulations adopted by the Department of Health and Human Services is 2 C.F.R. § 200.340(a)(4), which allows the Department to determinate federal awards when "pursuant to the terms and conditions of the Federal award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities." 2 C.F.R. § 200.340(a)(4); *see also Shapiro v. Dep't of Agric.*, Civ. A. No. 25-8, 2025 WL 3473291, at *5–6 (M.D. Pa. Dec. 3, 2025) (no jurisdiction to challenge to agency termination under 2 C.F.R.§ 300.40).

## B.    Factual Allegations

### 1.    CDC and HRSA Have Begun a Process of Evaluating Whether Grants Meet Their Priorities.

The Centers for Disease Control ("CDC") awards funding through different types of grants, including discretionary and non-discretionary grants and cooperative agreements.  *See* Legier Decl. ¶ 4-5.  The Health Resources and Service Administration ("HRSA") also issues discretionary and non-discretionary grants and cooperative agreements.  Baugh Decl. ¶¶ 4–5.

Both CDC and HRSA have published their agency priorities.  On September 12, 2025, HRSA published its Strategic Priority Areas.  *See* Baugh Dec. ¶ 7.  The CDC published its priorities statement on September 17, 2025.  Legier Decl. ¶ 7.  The Department of Health and Human Services published HHS Priorities on September 30, 2025.  Baugh Decl. ¶ 9.

Subsequently, both agencies published terms and conditions for their grants and agreements.  On September 30, 2025, HRSA published FY 2026 HRSA General Terms and Conditions applicable to all discretionary awards with funds and award modifications with funds made on or after October 1, 2025.  *See* Baugh Decl. ¶ 8 (citing https://www.hrsa.gov/sites/default/files/hrsa/grants/manage/fy2026-update-hrsa-general-terms-and-condition.pdf).  On October 1, 2025, CDC published its General Terms and Conditions for Research Grants and Cooperative Agreements (CDC General Terms and Conditions).  *See* Legier Decl. ¶ 9 (citing https://www.cdc.gov/grants/documents/General-Terms-and-Conditions-Research-Awards.Eff.2025.10.01.pdf).

In conjunction with these statements, CDC and HRSA have been undertaking large-scale reviews of their discretionary award portfolios.  *See* Legier Decl. ¶¶ 10, 15; Baugh Decl. ¶¶ 10, 14-15.

2.  CDC and HRSA Terminated Plaintiff's Grants Because They Did Not Align with Agency Priorities.

Plaintiff is a professional association with a membership of approximately 67,000 pediatricians.  Compl. (ECF No. 1) ¶ 13.[1]

---

[1]    Solely for the purposes of this opposition, Defendants do not dispute the material allegations in the Complaint cited in the Factual Background section but reserve the right to address those allegations at a later date.

On December 16, 2025, HRSA terminated four discretionary grant awards to Plaintiff. Baugh Decl. ¶ 11.  On December 16, 2025, CDC terminated three discretionary grant awards to Plaintiff.  Legier Decl. ¶ 11.  These seven grants total approximately twelve million dollars. Compl. ¶ 32.

On December 17, Plaintiff received letters from CDC and HRSA terminating the grants. Compl. ¶¶ 51, 53.  As explained in those termination notices, the CDC and HRSA terminated those grants pursuant to 2 C.F.R § 200.340(a)(4) after determining that each award "no longer effectuates agency and Department of Health and Human Services [] priorities."  PI Mot. Ex. 2, Waldron Decl. Ex. 1, Termination Notice (ECF No. 2-2) at 30; *see also id.* at 37, 45, 48, 50, 52, 54.

Neither agency terminated all their grants to Plaintiff.  Plaintiff is the recipient of one un-terminated CDC grant and the recipient of three un-terminated HRSA grants.  Baugh Decl. ¶ 17; Legier Decl. ¶ 17.  Further, Plaintiff's affiliate, the New Jersey Chapter of the American Academy of Pediatrics, is the recipient of one HRSA award that has not been terminated.  Baugh Decl. ¶ 17.

Plaintiff alleges that the grounds for the terminations are "implausible" and therefore were in retaliation for Plaintiff's public statements criticizing Administration priorities and policies. Compl. (ECF No. 1) ¶¶ 33–39, 54.  Plaintiff points to a few negative statements made by the Secretary about Plaintiff and then statements from three others who have no apparent role whatsoever with respect to these grants.  *Id.* ¶¶ 40–48.  Plaintiff asserts that the terminations will cause it irreparable harm in the form of layoffs of about ten percent of its workforce and inhibit its work on about a dozen programs.  *Id.* ¶¶ 62–67.  Plaintiff contends that "children's lives will be lost as a result of the terminations."  *Id.* ¶ 70.

Plaintiff sued on December 24, 2025, bringing a five-count complaint: (1) First Amendment retaliation (Count I), *id.* ¶¶ 71-76; (2) First Amendment viewpoint discrimination

(Count II), *id.* ¶¶ 77–83; (3) First Amendment unconstitutional conditions on government grants (Count III), *id.* ¶¶ 84–87; (4) Fifth Amendment Equal Protection violation (Count IV), *id.* ¶¶ 88–94; and (5) Administrative Procedure Act claim (Count V), *id.* ¶¶ 95–100.  Plaintiff asks for an order restoring the terminated grants and "disburse[ment] of funds."  *Id.* at 35.

Contemporaneously with the Complaint, Plaintiff also moved for a temporary restraining order, or in the alternative, preliminary injunction.  PI Mot. (ECF No. 1).  The preliminary injunction motion seeks the same relief as the Complaint.  Proposed Order (ECF No. 2-4).  The sole bases for the motion for temporary restraining order or preliminary injunction are Plaintiff's duplicative First Amendment retaliation (Count I) and viewpoint discrimination (Count II) claims. PI Mem. (ECF 2-1) at 14–20.  The other claims asserted in the Complaint are not asserted as grounds for the requested emergency relief and thus are not addressed in this opposition.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20.  The moving party bears the burden of persuasion and must demonstrate "by a clear showing" that the requested relief is warranted.  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).  A "court must be persuaded as to all four factors."  *Scottsdale Capital Advisors Corp. v. Fin. Indus. Regul. Auth. Inc.,* 678 F. Supp. 3d 88, 100 (D.D.C. 2023).

Before the Supreme Court's decision in *Winter*, courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another.  *Damus v. Nielsen*, Civ. A. No. 18-0578 (JEB), 2018 WL 3232515, at *4

(D.D.C. July 2, 2018) (quoting *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009)).  The Supreme Court overruled the sliding scale approach, holding that "a plaintiff seeking a preliminary injunction must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (quoting *Winter*, 555 U.S. at 20).

Thus, if the Court concludes that a claim fails as a matter of law—on a point of jurisdiction or merits—then a preliminary injunction is inappropriate.  *See United States Ass'n of Reptile Keepers, Inc. v. Zinke*, 852 F.3d 1131, 1135 (D.C. Cir. 2017).  Because preliminary injunctions are not "awarded as of right," but "[a]s a matter of equitable discretion, a preliminary injunction does not [even] follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits."  *Benisek v. Lamone*, 585 U.S. 155, 158 (2018).  Even if the movant can show a strong likelihood of success on the merits but fails to make a sufficient showing of irreparable injury, the Court should deny the request for preliminary injunctive relief without considering the other factors.  *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).

Where a party "seeks a mandatory injunction—to change the status quo through action rather than merely to preserve the status quo—typically the moving party must meet a higher standard than in the ordinary case: the movant must show 'clearly' that [it] is entitled to relief or that extreme or very serious damage will result."  *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006); *Pantoja v. Martinez*, No. 21-7118, 2022 WL 893017, at *1 (D.C. Cir. 2022) (per curiam) (characterizing injunction that would reinstate the plaintiff in his prior leadership roles as a "mandatory preliminary injunction . . . requir[ing] a higher standard than an ordinary preliminary

injunction"); *but see League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016) (rejecting distinction between a mandatory and prohibitory injunction).

## ARGUMENT

### I.  Plaintiff is Unlikely to Succeed on the Merits.

#### A.  The Court Lacks Subject-Matter Jurisdiction to Grant the Monetary Relief Plaintiff Seeks.

##### 1.  Plaintiff's Claim Is Not Redressable Because the Waiver of Sovereign Immunity for Damages Claims from Contracts is the Tucker Act, and Plaintiff Must Bring that Claim in the Court of Federal Claims.

Plaintiff "must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citation modified). "The most obvious problem in the present case is redressability." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 568 (1992). "For an injury to be redressable, the court must be capable of granting the relief sought." *McNeil v. Brown*, No. 19-5093, 2022 WL 4086726, at *1 (D.C. Cir. Sep. 2, 2022) (citing *Newdow v. Roberts*, 603 F.3d 1002, 1010–11 (D.C. Cir. 2010)). Here, Plaintiff asks the Court to compel Defendants to restore the canceled grants. Proposed Order at 1, ECF No. 2-4 (requesting that the Court order "Defendants and their agents take all steps necessary to ensure that the Centers for Disease Control and Prevention and Health Resources and Service Administration disburse funds on AAP's awards in the customary manner and in customary timeframes"); *see also* Compl. (ECF No. 1) at 35. In other words, Plaintiff asks for "the classic contractual remedy of specific performance." *Vera Inst. of Just. v. Dep't of Just.*, --- F. Supp. 3d ---, Civ. A. No. 25-1643 (APM), 2025 WL 1865160, at *12 (D.D.C. Jul. 7, 2025) (quoting *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985)); *see also Am. Ass'n of Physics Teachers, Inc. v. Nat'l Sci. Found.*, --- F. Supp. 3d ---, Civ. A. No. 25-1932 (JMC), 2025 WL 2615054, at *9 (D.D.C. Sep.

10, 2025) ("While Plaintiffs do not ask for money damages, they nonetheless seek a contract-based remedy: specific performance.").

This Court cannot grant that relief because "the United States, as a sovereign, is generally immune from suits seeking money damages . . . [unless] Congress [] choos[es] to waive that immunity." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024); *see also United States v. Testan*, 424 U.S. 392, 399 (1976); *Clark v. Libr. of Cong.*, 750 F.2d 89, 103 (D.C. Cir. 1984). A "waiver of sovereign immunity must be 'unmistakably clear in the language of the statute.'" *Kirtz*, 601 U.S. at 48 (quoting *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 76 (2000)). Plaintiff does not identify a waiver of sovereign immunity for money damages that gives this Court jurisdiction over a grant termination case. *See, e.g.*, PI Mem. (ECF No. 2-1) at 22–23.[2] Nor can it because the Tucker Act channels suits like this for money damages from grant terminations to the Court of Federal Claims. *See Dep't of Educ. v. California*, 604 U.S. 650, 650 (2025) ("[T]he APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered here. Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" (citation omitted)); *NIH v. Am. Pub. Health Ass'n ("APHA")*, 145 S. Ct. 2658, 2658 (2025) (similar). As a result, none of Plaintiff's constitutional claims (Counts I–IV) nor its APA claim (Count V) can be the basis of a money damages award against the federal government.

Plaintiff insists the Court has jurisdiction because Plaintiff asserts rights under the First Amendment, not under the terms of the grants. PI Mem. (ECF No. 2-1) at 23 (citing *Megapulse,*

---

[2]    Citations are to the ECF-generated page numbers, appearing in blue color at the top right corner of each page.

*Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)). To determine whether district court jurisdiction is proper, the Court must assess whether the claims "are essentially contractual." *Megapulse*, 672 F.2d at 967. The Court must consider (1) whether "the source of the rights" asserted is contractual or is "based on truly independent legal grounds," and (2) "the type of relief sought" is of a contractual nature. *Id*. at 968–71. In applying this test, the Court must look past artful pleading because "a plaintiff whose claims against the United States are essentially contractual should not be allowed to avoid the jurisdictional (and hence remedial) restrictions of the Tucker Act by casting its pleadings in terms that would enable a district court to exercise jurisdiction under a separate statute and enlarged waivers of sovereign immunity, as under the APA." *Id*. at 967; *see also Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 77–78 (D.C. Cir. 1985); *Int'l Eng'g Co., Div. of A-T-O, Inc. v. Richardson*, 512 F.2d 573, 580 (D.C. Cir. 1975). A straightforward *Megapulse* analysis establishes that Plaintiff's constitutional claims are contractual claims in disguise.

With respect to the first prong, "the source of the rights" asserted by Plaintiff is the grant agreements themselves, including the contractual termination clause in each agreement. In other words, Plaintiff's asserted right to the funds here arises solely from the grant agreements and "in no sense . . . exist[s] independently of" those contracts. *Spectrum Leasing Corp.*, 764 F.2d at 894. Plaintiff would have no claim absent the grants and the government's alleged breach. *Megapulse*, 672 F.2d at 967–68. The source of the right asserted is therefore not "truly independent" of the contracts, or not "based on truly independent legal grounds." *Id*. at 970; *see also Sols. in Hometown Connections v. Noem*, Civ. A. No. 25-0885, 2025 WL 1103253, at *4–5, *9–10 (D. Md. Apr. 14, 2025) (concluding under the *Megapulse* test that the grant agreements were the source-of-the rights, where the termination provisions in certain grants expressly incorporated the termination regulation at 2 C.F.R. § 200.340(a)(2)).

With respect to the second prong of *Megapulse,* the relief sought, at base, is payment of money.  In seeking reinstatement of awards (*i.e.,* by setting aside their grant terminations), the "essence of [Plaintiffs'] claim is a request for specific performance of the original contract." *Ingersoll-Rand*, 780 F.2d at 79–80.  This is a "typical contract remedy" that indicates a claim is "founded upon a contract for purposes of the Tucker Act." *Spectrum Leasing*, 764 F.2d at 894–95. The payment of money, far from being merely incidental to or "hint[ed] at," is the principal object of their suit.  *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1112 (D.C. Cir. 2022).  Plaintiff's "claim that a government agency has violated [its First Amendment rights] by refusing performance under a contract is substantively indistinguishable from a breach of contract claim." *Suburban Mortg. Assocs., Inc. v. Dep't of Hous. & Urb. Dev.*, 480 F.3d 1116, 1128 (Fed. Cir. 2007).  The Supreme Court's ruling in *APHA* confirms this.  As in *APHA*, Plaintiff seeks adjudication of claims "'based on' the research-related grants." *APHA*, 145 S. Ct. at 2658 (quoting *California*, 604 U.S. at 651).  As in *APHA*, Plaintiff asks for "relief designed to enforce [an] obligation to pay money pursuant to those grants."  *Id.* (citation modified).  Thus, as in *APHA*, "[t]he core of [Plaintiff's complaint] alleges that the Government unlawfully terminated their grants," so "th[is] is a breach of contract claim," that cannot be heard here.  *Id*. at 2665 (Kavanaugh, J., concurring in part and dissenting in part); *see also Am. Ass'n of Physics Teachers,* 2025 WL 2615054, at *9-11; *Veterans Command, LLC v. United States*, Civ. A. No. 21-2018 (RJL), 2021 WL 4437694, at *2 (D.D.C. Sep. 14, 2021).

Plaintiff points to *American Bar Association v. Department of Justice*, 783 F. Supp. 3d 236, 243–45 (D.D.C. 2025) (Cooper, J.), to argue that "the law is clear that First Amendment claims like those at issue here can properly be brought in district court."  PI Mem. (ECF No. 2-1) at 22. There, Judge Cooper found that "a ruling for the ABA would effectively result in the continuation

of monetary grants payment by the government." *Am. Bar. Ass'n*., 783 F. Supp. 3d at 244.  Judge

Cooper concluded that *Bowen v. Massachusetts*, 487 U.S. 879, 895 (1988), distinguishes between

the remedy of money damages, which is impermissible, and "specific performance," which is.  *Am.*

*Bar. Ass'n*., 783 F. Supp. 3d at 244.

Indeed, *Bowen* states that "[d]amages are given to the plaintiff to substitute for a suffered

loss, whereas specific remedies are not substitute remedies at all, but attempt to give the plaintiff

the very thing to which he was entitled." 487 U.S. at 895 (citation modified).  Accordingly, *Bowen*

reasoned, when money is the specific thing a plaintiff claims it is owed, rather than a mere

substitute for a plaintiff's claimed loss, the plaintiff does not seek "money damages" within the

APA's meaning, and the APA's sovereign immunity waiver thus applies.  *Id.*

But that aspect of *Bowen* no longer is controlling in light of *Great-West Life & Annuity*

*Insurance Co. v. Knudson*, 534 U.S. 204 (2002), which expressly adopted Justice Scalia's dissent

in *Bowen*.  In *Bowen*, Justice Scalia argued that the majority's reason for concluding that the claims

at issue did not seek money damages "is simply wrong."  *Bowen*, 487 U.S. at 917 (Scalia, J.,

dissenting).  Justice Scalia acknowledged that the claims "fit a general description of a suit for

specific relief, since the award of money undoes a loss by giving respondent the very thing (money)

to which it was legally entitled," but rejected the relevance of the specific versus substitute relief

dichotomy on which the majority relied.  *Id.*  He explained that "damages" is a term of art that has

"been used in the common law for centuries" and had a meaning "well established by tradition."

*Id.*  "Part of that tradition," Justice Scalia wrote, "was that a suit seeking to recover a past due sum

of money that does no more than compensate a plaintiff's loss is a suit for damages, not specific

relief."  *Id.* at 918.

Justice Scalia concluded by setting forth the following rule: "Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied." *Id.* at 918–19 (Scalia, J., dissenting).  He identified only a single "rare" exception to this general rule, one that plainly does not encompass Plaintiff's suit here: suits "to prevent future losses that were either incalculable or would be greater than the sum awarded."  *Id.* at 918.

Fourteen years later, the Supreme Court in *Knudson* directly quoted Justice Scalia's *Bowen* dissent and held that "[a]lmost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied."  *Knudson*, 534 U.S. at 210 (quoting *Bowen*, 487 U.S. at 918–19 (Scalia, J., dissenting)).  That is so because "[t]he 'substance' of a money judgment is a compelled transfer of money." *Id.* at 216.

*Knudson* therefore limited *Bowen* to cases that are "not merely for past due sums, but for an injunction to correct the method of calculating payments going forward."  534 U.S. at 212.  In other words, *Knudson* explained, the APA waived sovereign immunity in *Bowen* not because the plaintiff sought specific rather than substitute monetary relief, but because the plaintiff sought prospective injunctive relief separate and apart from the sums of money it sought to compel the government to pay.  *Id.*

After *Knudson*, the test no longer is whether a plaintiff seeks specific or substitute monetary relief.  Now, all that matters is whether a suit "seek[s] . . . to compel the defendant to pay a sum of money to the plaintiff."  *Knudson*, 534 U.S. at 210 (quoting *Bowen*, 487 U.S. at 918-19 (Scalia, J., dissenting)); *see also Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530–31 (D.C. Cir. 2006) (applying *Knudson* and explaining that "the rule has long been that '[a] plaintiff cannot transform

a claim for damages into an equitable action by asking for an injunction that orders the payment of money[]'"). If so, the suit is for "money damages," regardless of whether the plaintiff characterizes the sum of money it seeks as specific rather than substitute relief. *Id.* In short, the Supreme Court decided *Knudson* after *Bowen*; it expressly adopted the *Bowen* dissent's position; and it distinguished *Bowen* in a manner that narrowed *Bowen* considerably. Accordingly, in *Knudson*'s aftermath, a plaintiff seeking to compel an agency to pay it a sum of money is seeking "money damages," and cannot rely on *Bowen* to overcome sovereign immunity. And were there any lingering doubt after *Knudson* that a suit seeking to compel an agency to pay a plaintiff grant funds is a suit for "money damages," the recent Supreme Court decision in *California* has now settled it conclusively. *California*, 604 U.S. at 650; *see also APHA*, 145 S. Ct. at 2660 ("The Administrative Procedure Act's 'limited waiver of [sovereign] immunity' does not provide the District Court with jurisdiction to adjudicate claims 'based on' the research-related grants or to order relief designed to enforce any 'obligation to pay money' pursuant to those grants," citing *California*). The Supreme Court's "command[]" is clear: when a plaintiff, like Plaintiff here, seeks to compel an agency to pay grant funds, the relief that it seeks constitutes money damages. *APHA*, 145 S. Ct. at 2663 (Gorsuch, J., concurring in part and dissenting in part) ("Lower court judges may sometimes disagree with this Court's decisions, but they are never free to defy them."). Thus, however labeled, the claims "are essentially contractual," *Megapulse*, 672 F.2d at 967, and not subject to district court jurisdiction.

### 2.    The Administrative Procedure Act Does Not Save Plaintiff's Claims

Finally, the Court need not dwell on Plaintiff's cursory attempt to anchor jurisdiction on the APA. PI Mem. (ECF No. 2-1) at 24 n. 3. "This Court need not . . . address undeveloped arguments[.]" *Robinson v. Farley*, 364 F. Supp. 3d 154, 162 (D.D.C. 2017). "It is plaintiff's task to spell out his arguments squarely and distinctly." *Raines v. Dep't of Just.*, 424 F. Supp. 2d 60,

66 n.3 (D.D.C. 2006) (cleaned up).  "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived."  *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013).  Regardless, the APA claim (Count V) cannot survive because "the APA does not authorize suits seeking 'money damages' against the Government."  *Jibril v. Mayorkas*, 101 F.4th 857, 870 (D.C. Cir. 2024) (quoting 5 U.S.C. § 702).  Indeed, Plaintiff recognizes the futility of maintaining an APA claim for money damages and appears to disclaim asserting jurisdiction under the APA.  PI Mem. (ECF No. 2-1) at 22.  Rightly so.  "Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied."  *Knudson*, 534 U.S. at 210 (quoting *Bowen*, 487 U.S. at 918-19 (Scalia, J., dissenting)); *accord Richards*, 453 F.3d at 531 (same).  That description fits this suit—in which Plaintiff seeks to compel Defendants to pay them sums of money.  By asking the Court to "disburse funds on AAP's grants," PI Mot. at 1, Plaintiff seeks "to compel [Defendants] to pay a sum of money" and its suit is "for 'money damages.'"  *Knudson*, 534 U.S. at 210.  Accordingly, the APA's limited waiver of sovereign immunity does not extend to this suit.  *See* 5 U.S.C. § 702; *Jibril*, 101 F.4th at 870; *see also Am. Ass'n of Physics Teachers*, 2025 WL 2615054, at *9.

In short, this Court lacks subject-matter jurisdiction because Plaintiff has failed to assert an injury this Court can redress or because there is no applicable waiver of sovereign immunity. Indeed, if the Court "concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."  *Arbaugh*, 546 U.S. at 514.

## B.    Plaintiff's First Amendment Claim Fails.

### 1.    Plaintiff fails to allege facts that carry its burden to show but for causation

"To establish a claim for retaliation under the First Amendment, an individual must prove (1) that he engaged in protected conduct, (2) that the government 'took some retaliatory action

sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again;' and (3) that there exists 'a causal link between the exercise of a constitutional right and the adverse action taken against him.'"  *Doe v. District of Columbia*, 796 F.3d 96, 106 (D.C. Cir. 2015) (quoting *Aref v. Holder*, 774 F. Supp. 2d 147, 169 (D.D.C. 2011)).  "The improper motive must be a but-for cause of the government action, 'meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.'"  *Comm. on Ways & Means v. Dep't of Treas.*, 45 F.4th 324, 340 (D.C. Cir. 2022) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019)).

Based on the Declarations of Cynthia Baugh and Jamie Legier, the Government is entitled to "the 'presumption of regularity,' under which 'courts presume' that public officers have 'properly discharged their official duties' unless there is 'clear evidence to the contrary.'" *Owlfeather-Gorbey v. Avery*, 119 F.4th 78, 86 (D.C. Cir. 2024) (quoting *United States v. Chemical Found.*, 272 U.S. 1, 14–15 (1926)).

Here, as to the first factor, Defendant does not dispute that Plaintiff's officers and employees have spoken out about public issues on which they disagree with the current administration.  But Plaintiff has not established the remaining factors.

With respect to the third factor, Plaintiff does not allege that any particular speech is the but-for cause of the grant terminations.  *See* Pl.'s Mot. at 7–10 (discussing varied statements "concerning vaccines, gender-affirming medical care, and other public health topics" as early as June 2025); *see also Doe*, 796 F.3d at 106 (listing elements of First Amendment retaliation claim).

Plaintiff makes a conclusory assertion that the cancellation of $12 million in grants is sufficient to chill a person of ordinary firmness.  Plaintiff, however, does not develop that argument and as a result, has not carried its burden because it "is plaintiff's task to spell out his arguments squarely and distinctly," *Raines*, 424 F. Supp. 2d at 66 n.3, and "[p]erfunctory and undeveloped

arguments, and arguments that are unsupported by pertinent authority, are deemed waived," *Johnson*, 953 F. Supp. 2d at 250. Indeed, Plaintiff has not alleged that the terminated grants have had any effect on its speech, or that it is advocating any less zealously for the positions it advances.

Third, Plaintiff has not established that there was a causal link between the exercise of a constitutional right and the alleged adverse action taken against it. The grants were terminated because they were not aligned with agency priorities pursuant to 2 C.F.R. § 200.340. *See, e.g.*, Baugh Decl. ¶¶ 10–11 (HRSA grants terminated during large-scale review of agency awards); Legier Decl. ¶¶ 10–12, 15 (same); Waldron Decl. Ex. 1 (ECF No. 2-2 at 29) ("[Y]our organization's award materials reflect design elements that are not aligned with current CDC and HHS priorities to, to the extent permitted by applicable federal law, deprioritize diversity, equity, and inclusion initiatives that prioritize group identity and to improve and protect the lives and health of all Americans."); Waldron Decl. Ex. 2 (ECF No. 2-2 at 37) ("For example, your organization's award materials commit to providing health equity as a strategy in which Capacity Building Assistance (CBA) will be provided. Further, your organization also uses 'Establish standards and support for health information technology (HIT) use that promotes equity and population health improvements.' as an outcome measure."); Waldron Decl. Ex. 3 (ECF No. 2-2 at 45) ("Your Project Abstract states that AAP 'emphasizes equity, diversity, and inclusion as key foundational components' of its work and that the program will 'address health disparities and advance health equity.'"). Plaintiff has not alleged that these letters misstate its award materials' focus on diversity, equity and inclusion initiatives nor has Plaintiff alleged that that "current CDC and HHS priorities" are to "deprioritize" such initiatives.

Plaintiff compares the termination of the grants here to the terminations of the grants at issue in *American Bar Association*. *See* PI Mem. (ECF No. 2-1) at 14. But the only commonality

is that they both involved grants. In that case, the Court noted that the Deputy Attorney General "announced a new [official] DOJ policy toward the ABA . . . just a day before the grants were terminated" and asserted that the government "suggest[ed] no other cause for the cancellation apart from the sentiments expressed by Deputy Attorney General Blanche in his memorandum." *Am. Bar Ass'n*, 783 F. Supp. 3d at 246 ("The Blanche Memo explicitly spells out how DOJ will be changing its approach toward the ABA in light of the ABA's lawsuit against the United States."). Here, by contrast, there is no dispute that the grants were terminated pursuant to grant terms and there is no analogous statement about changing the agency's "approach" toward Plaintiff. Indeed, Plaintiff readily admits that it has no direct evidence that retaliation was the but-for cause of the grant terminations. *See* PI Mem. (ECF No. 2-1) at 22 (asserting that the "confluence of circumstances here establishes that AAP was targeted for its view"). Plaintiff's circumstantial evidence, which it sorts into five buckets, is attenuated. Plaintiff points to negative statements, largely by people who had no apparent involvement with the grants, and Plaintiff's misunderstanding about an incomplete agency-wide review of grants.

First, Plaintiff points to a few comments by Secretary Kennedy and a grab bag of comments by numerous individuals with no role in terminating the grants—including individuals with no government role whatsoever. *See* PI Mem. (ECF No. 2-1) at 16-17. Even if Plaintiff provided sufficient evidence to show that some individuals at the Department of Health & Human Services strenuously disagreed with certain of Plaintiff's positions, that is not enough. *Cf. Shuler v. Dicks*, Civ. A. No. 24-1292 (RDM), 2025 WL 894420, at *7 (D.D.C. Mar. 24, 2025) ("[I]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." (quoting *Nieves*, 587 U.S. at 398–99)), *appeal dismissed*. Indeed, Plaintiff relies heavily on the statements of individuals with no apparent role with respect to the

grants—let alone the ability to terminate them. *See, e.g.*, PI Mem (ECF No. 2-1) at 3-4, 10 (tweet by Calley Means); *id.* at 4, 16 (tweet from CEO of Children's Health Defense, an individual with no government positions); *id.* at 4, 10, 17, 22 (tweets by two members of Centers for Disease Control's Advisory Committee on Immunization Practices).

In any event, the Court may not rely on those statements to infer an improper motive but must review their significance within the context of the exercise of the legitimate executive authority here—review of existing grants for consistency with Department priorities. *Trump v. Hawaii*, 585 U.S. 667, 699–702 (2018) ("[T]he issue before us is not whether to denounce the statements. [W]e must consider not only the statements of a particular President, but also the authority of the Presidency itself.").

Plaintiff relies almost exclusively on statements by non-decisionmakers, which have no bearing on the decision here. *See* Baugh Decl. ¶ 12 ("As far as I am aware, neither the Advisory Committee on Immunization Practices nor the organization, Children's Health Defense, have a role in this process to evaluate HRSA's discretionary award portfolio."); *see also George v. Molson Coors Beverage Co. USA, LLC*, No. 22-7111, 2023 WL 2661588, at *3 (D.C. Cir. Mar. 28, 2023) ("[Plaintiff']s evidence does not create a genuine issue as to retaliation. [His supervisor's] emails, which expressed displeasure about [the [plaintiff's] prolonged absence from work, do not support retaliation because [the supervisor] was not the relevant decisionmaker in [the plaintiff's] termination."); *Velikonja v. Mueller*, 362 F. Supp. 2d 1, 12 (D.D.C. 2004) ("Even if some unidentified OPR employee's suggestion to be "careful" constituted competent evidence, which it does not, and even if it could be construed as discouraging protected activity, plaintiff has not shown that the employee was involved in the delay or had any influence whatsoever over the process." (Title VII retaliation)), *aff'd*, 466 F.3d 122 (D.C. Cir. 2006), *and abrogated on other*

*grounds by Doe v. Chao*; *Hudson v. Norris*, 227 F.3d 1047, 1053–54 (8th Cir. 2000) ("Although [Plaintiff] presented some evidence suggesting that Personnel Officer Watson viewed [Plaintiff] as an 'undesirable choice' for the promotion, there was nothing to rebut the evidence that Personnel Officer Watson played only a clerical role in the promotion process and exercised no influence over the decision."); *cf. Ackerman v. State of Iowa*, 19 F.4th 1045, 1060 (8th Cir. 2021) (Plaintiff's claim defeated at summary judgment because Plaintiff failed to show that the decision makers had retaliatory motive); *Leek v. Miller*, 698 F. App'x 922, 926 (10th Cir. 2017) ("[Defendant's] alleged comment about [Plaintiff] and his paperwork bothering someone else was an offhand remark made after the decision to move him had been finalized and was not evidence of retaliatory intent, particularly since [Plaintiff] acknowledged that [Defendant] was not the decisionmaker.")

That is especially true here because Calley Means left his role as an advisor to Secretary Kennedy before the grant terminations, *see Health Adviser Calley Means Leaves White House Role, NYT Reports*, Reuters (Oct. 30, 2025, 2:18PM EDT), https://www.yahoo.com/news/articles/health-adviser-calley-means-leaves-181817761.html ("He stepped down about a month ago[.]"), and Children's Health Defense has no government affiliation whatsoever. Indeed, as American Academy of Pediatrics emphasizes about itself, Children's Health Defense is engaged in active lawsuits with the Department and the Government. *See Children's Health Def. v. FDA*, Civ. A. No. 23-2316 (D.D.C. filed Aug. 10, 2023); *Children's Health Def. v. Nat'l Insts. of Health*, Civ. A. No. 23-1016 (TJK) (D.D.C. filed Apr. 12, 2023); *cf. Children's Health Def. v. Hegseth*, Civ. A. No. 25-4363 (ACR) (D.D.C.) (filed Dec. 16, 2025).

Arguing that it can tie these disparate actors to the decisionmaker, Plaintiff relies on *Media Matters v. Federal Trade Commission*, No. 25-5302, 2025 WL 2988966 (D.C. Cir. Oct. 23, 2025), but *Media Matters* is inapposite procedurally and on its facts. *See* PI Mem (ECF No. 2-1) at 16–

17.  First, in *Media Matters*, the burden was on the agency to establish a negative—in contrast to Plaintiff's burden here—because the agency sought a stay of an already granted preliminary injunction: "[T]o obtain a stay, the burden is on the Commission to show a likelihood that no causal link will be found between its Demand and Media Matters' critical reporting[.]"  *Id.* at *6. Moreover, in that case, among other things, "a key . . . decisionmaker" spoke publicly and in a leaked memo about targeting groups like Media Matters because of the content of their speech. *Id.* at *8.  Thus, while the Court referred to statements about individuals who may have had roles related to the alleged retaliation, it did so as a small part of "the seemingly unusual and unprecedented array of facts in the record at this stage[.]"  *Media Matters*, 2025 WL 2988966, at *9.  Here, the dotted lines drawn to individuals with no role at the Department appear to be Plaintiff's primary evidence, which is insufficient.

Second, further relying on *Media Matters*, Plaintiff points to "proximity in time between the protected speech and government's adverse actions."  PI Mem (ECF No. 2-1) at 16–17. Proximity alone is insufficient to obtain injunctive relief.  *See Bd. of Cnty. Commissioners, Wabaunsee Cnty., Kansas v. Umbehr*, 518 U.S. 668, 685 (1996) ("[A]n initial showing that requires him to prove more than the mere fact that he criticized the Board members before they terminated him."); *Thorp v. District of Columbia*, 317 F. Supp. 3d 74, 87 (D.D.C. 2018) ("The Court finds this *post hoc ergo propter hoc* argument unlikely to prevail."), *aff'd*, No. 18-7112, 2018 WL 6720512 (D.C. Cir. Dec. 18, 2018).

In any event, Plaintiff fails to explain how much proximity there is because it does not identify any particular protected speech that it believes caused Defendants to terminate the grants. *Cf. US Dominion v. MyPillow, Inc.*, Civ. A. No. 21-0445 (CJN), 2022 WL 1597420, at *11 (D.D.C. May 19, 2022) ("Here, Lindell fails adequately to allege a causal connection because he has

- 21 -

pointed to no First Amendment protected speech of his own that Smartmatic targeted out of retaliatory animus.").  Indeed, Plaintiff has consistently articulated the same position on vaccinations and gender-affirming healthcare for months, if not years.  *See, e.g.*, Del Monte Decl. ¶ 6 ("AAP has been consistently vocal about its support for pediatric vaccinations[.]"); *id.* ¶ 9 ("Similarly, AAP has consistently supported access to gender-affirming care[.]" (citing a 2023 report)); *see, e.g.*, Letter from American Academy of Pediatrics President to Secretary of Health and           Human           Services           (Sept.           29,           2020), https://downloads.aap.org/DOFA/AAPLettertoHHSandFDAChildreninCOVID19VaccineTrials. pdf (urging the Department to include children in vaccination trials: "Successful vaccination efforts in the United States will build upon 70 years of scientific collaborations and accomplishments that have resulted in safe and effective vaccines against polio, measles, diphtheria, tetanus, pertussis . . . .").  As Plaintiff notes, it has "continually clashed with HHS over vaccine policy and other public health issues."  PI Mem (ECF No. 2-1) at 15.  Plaintiff's failure to differentiate a specific act of protected speech from among this ongoing criticism negates its proximity argument.

Plaintiff points to two purported irregularities: (1) HRSA and CDC cancelled the grants on the same day, and (2) "program staff" were not aware that the grants were being cancelled.  *See* PI Mem (ECF No. 2-1) 17–18.  Plaintiff offers no reason to believe that "program staff" would normally review grants for alignment with agency priorities.  Indeed, as described in the Baugh and Legier Declarations, this is a new process with which Plaintiff would have no material insight. Similarly, Plaintiff offers no basis to imply that there is something sinister about coordination within the Department of Health and Human Services.

*Fourth*, Plaintiff claims it "was singled out for adverse treatment."  PI Mem (ECF No. 2-1) at 18–19.  Plaintiff's conclusion is undermined by the facts that CDC has terminated six other discretionary awards for non-alignment with agency priorities, Legier Decl. ¶ 10; CDC and HRSA are both in the process of reviewing existing grants, Legier Decl. ¶¶ 10, 15; Baugh Decl. ¶ 15; and both organizations still have grants awarded to Plaintiff and its affiliate.  *See* Legier Decl. ¶ 17; Baugh Decl. ¶ 17.

*Finally*, Plaintiff claims that Defendants' explanation for the terminations are implausible because the grants were renewed in 2025.  *See* PI Mem. (ECF No. 2-1) at 5 ("Continuation applications were approved for all seven, and four of these approvals issued as recently as September 2025.").  The Legier and Baugh Declarations provide a clear explanation for the timing.  The agencies issued their priorities declarations and terms and conditions for grants in mid-to-late September and early October 2025.  *See* Legier Decl. ¶¶ 7–9; Baugh Decl. ¶¶ 7–8.  The agencies' large-scale review of grants was then conducted in conjunction with those documents.  Legier Decl. ¶¶ 10-11; Baugh Decl. ¶ 10.  Plaintiff also points to the fact that "other similarly situated entities will sometimes be funded . . . to work in partnership with" Plaintiff and those entities' grants have not been terminated.  PI Mem. (ECF No. 2-1) at 3–4.  But awards given out as part of the same Notice of Funding Opportunity may be given for different subsets of work.  Baugh Decl. ¶ 13.  Thus, "some awards or some activities under funded awards, may not continue to effectuate agency priorities" while others continue to do so.  *Id.*

Ultimately, Plaintiff's timing argument undermines its claim of causation.  According to Plaintiff's own timeline, certain grants were approved "as recently as September 2025" despite Plaintiff's explicit criticism of Secretary Kennedy in August 2025.  PI Mem. (ECF No. 2-1) at 6.  What preceded the termination in grants was not Plaintiff engaging in protected speech but the

more recent issuance by the agencies of their priorities declarations and terms and conditions for grants. That chronology negates any inference of retaliation that Plaintiff attempts to raise in its motion. *See Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 332 n.8 (3d Cir. 2016) ("an employee's receipt of favorable treatment after engaging in protected activity severely undermines a claim that there was a causal connection between the activity and [a later] adverse employment action"); *Perry v. Clinton*, 831 F. Supp. 2d 1, 24 (D.D.C. 2011) (finding no inference of causation because "at Mr. Joria's first opportunity to retaliate against Ms. Perry—his review of her reimbursement requests in August 2003—he did not do so").

Even were the Court to conclude that Plaintiff has raised some inference of causation, this chronology still establishes that the challenged action would have been taken absent the asserted retaliatory motive and, accordingly, that the requisite but-for causation is lacking. *See Mt. Healthy Cty. v. Doyle.*, 429 U.S. 274, 287 (1977); *see also Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477 (2022); *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 203 (2024) (Jackson, J., concurring) ("Requiring that causal connection to a retaliatory motive is important, because '[s]ome official actions adverse to . . . a speaker might well be unexceptionable if taken on other grounds.'" (quoting *Hartman v. Moore,* 547 U.S. 250, 256 (2006))). Plaintiff says the termination letters are "boilerplate" and opines that they fail to show enough thought and care. *See* PI Mem. (ECF No. 2-1) at 20. Nothing in the termination regulation requires the Department to give a more detailed explanation to Plaintiff. *See Urban Sustainability Directors Network v. USDA*, Civ. A. No. 25-1775 (BAH), 2025 WL 2374528, at *30 (D.D.C. Aug. 14, 2025) (discussing the operation of § 200.340(a)(4) and nothing that a "termination based on § 200.340(a)(4) due a change in agency priorities can therefore be appropriate without the grantee having failed to meet any requirements in the award"). Moreover, as already noted, Plaintiff makes no case that its grants are aligned with

the agency's newly announced priorities.  Finally, Plaintiff's belief that its grants were valuable is

entitled to no weight here.  *Vatel v. All. of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011) ("[I]t

is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff."

(quoting *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000))).

In short, Plaintiff cannot establish a likelihood of success on its First Amendment

retaliation claim.

> ### 2. Plaintiff's "viewpoint discrimination claim" merely restates its retaliation claim based on a tweet by someone not involved in terminating the grants.

Plaintiff restates the same claim as "viewpoint discrimination.  *See* PI Mem. (ECF No. 2-

1) at 21 ("[f]or much the same reasons").  The only thing that Plaintiff adds is a quote from a tweet

by "one member of the Center for Disease Control's Advisory Committee on Immunization

Practices.  *See id.* at 22.  As discussed above, Plaintiff offers no basis to raise an inference that that

individual had even the slightest involvement in the termination decision.

Because the claims are redundant with each other, any separate "viewpoint discrimination"

claim fails for the same reason the retaliation claim fails.  *See Bailey v. Fed. Bureau of Prisons*,

780 F. Supp. 3d 96, 124 (D.D.C. 2025) (dismissing "First Amendment retaliation claim" because

it was "duplicative of [Plaintiff's] First Amendment claim").

## II.    Plaintiff Has Not Established Irreparable Harm.

The D.C. Circuit "has set a high standard for irreparable injury."  *Chaplaincy of Full Gospel

Churches*, 454 F.3d at 297.  Even if a Plaintiff can show standing, that does not mean they have

shown irreparable harm because "while standing and irreparable harm overlap, they are far from

the same."  *Santos v. Collins*, Civ. A. No. 24-1759 (JDB), 2025 WL 1823471, at *6 (D.D.C. Feb.

26, 2025).  The moving party must demonstrate an injury that is "'both certain and great'" and "of

such *imminence* that there is a 'clear and present' need for equitable relief to prevent irreparable

harm." *Id*. (emphasis in original) (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 298).
The injury must "be beyond remediation," meaning that where, as here, the "possibility that
adequate compensatory or other corrective relief will be available at a later date, in the ordinary
course of litigation, weighs heavily against a claim of irreparable harm." *Clevinger v. Advoc.
Holdings, Inc.*, 134 F.4th 1230, 1234 (D.C. Cir. 2024) (citation modified).  Plaintiffs have the
burden to put forth sufficient evidence to satisfy this high standard.  "The movant cannot simply
make 'broad conclusory statements' about the existence of harm.  Rather, [the movant] must
'submit[ ] . . . competent evidence into the record . . . that would permit the Court to assess whether
[the movant], in fact, faces irreparable harm[.]'" *Aviles-Wynkoop v. Neal*, 978 F. Supp. 2d 15, 21
(D.D.C. 2013) (quoting *Cornish v. Dudas*, 540 F. Supp. 2d 61, 65 (D.D.C. 2008)).  In short,
"irreparable harm requires not only a concrete, particularized harm, but a harm that is sufficiently
serious and irremediable so as to warrant the extraordinary relief of a court's intervention in a case
before factual and legal development." *Santos*, 2025 WL 1823471, at *6.

Plaintiff frames its irreparable harm as a loss of First Amendment freedoms.  PI Mem.
(ECF No. 2-1) at 23-24.  It argues that any constitutional violation constitutes per se irreparable
harm.  *Id*. (quoting *Talbott v. United States*, Civ. A. No. 25-0240, 2025 WL 842332, at *36 (D.D.C.
Mar. 18, 2025)).  That is not the law.  An alleged deprivation of a constitutional right does not
"constitute irreparable harm." *Hanson v. Dist. of Columbia*, 120 F.4th 223, 244 (D.C. Cir. 2024).
"Even in the sensitive areas of freedom of speech and religion, where the risk of chilling protected
conduct is especially high, we do not 'axiomatically' find that a plaintiff will suffer irreparable
harm simply because it alleges a violation of its rights." *Id*. (citing *Chaplaincy of Full Gospel
Churches*, 454 F.3d at 302).  Indeed, to obtain a preliminary injunction on a First Amendment free
expression ground, the plaintiff must "demonstrate a likelihood that they are engaging or would

engage in the protected activity the governmental action is purportedly infringing." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 302.  That is because "the relevant constitutional protection is not implicated without some corresponding individual conduct that faces a danger of chilling." *Id*.

The  per se approach to irreparable harm advanced by Plaintiff skirts the exacting requirements a plaintiff must meet before it can be granted the "extraordinary remedy" of a preliminary injunction. *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (citation modified). Allowing Plaintiff to assume an irreparable injury functionally would return this Court back to the "sliding scale" approach that the Supreme Court has expressly rejected. *See, e.g.*, *Starbucks Corp.*, 602 U.S. at 345-46 (citing *Winter*, 555 U.S. at 20).  As this Court has observed previously, "a plaintiff must show 'that irreparable injury is likely in the absence of an injunction,' regardless of the plaintiff's likelihood of success on the merits of his claims." *Singh v. Carter*, 185 F. Supp. 3d 11, 20 (D.D.C. 2016) (Howell, J.) (quoting *Winter*, 555 U.S. at 22 and denying preliminary relief for failure to establish irreparable harm).  Without the required showing of irreparable harm, Plaintiff is not entitled to a preliminary injunction no matter the certainty of success on the merits or public interest. *See Planned Parenthood of Greater New York v. HHS*, Civ. A. No. 25-2453 (BAH), 2025 WL 2840318, at *1 (D.D.C. Oct. 7, 2025) (discussing denial of preliminary injunction for failure to establish irreparable harm); *Acosta v. Dist. of Columbia Gov't*, Civ. A. No. 20-1189 (RC), 2020 WL 2934820, at *2-5 (D.D.C. Jun. 3, 2020) (denying preliminary relief for failure to establish irreparable harm).

Plaintiff's irreparable harm arguments are directed to monetary losses and not to alleged injuries to its constitutionally protected rights. Plaintiff does not even attempt to carry its "burden of persuasion" on irreparable harm "in order to secure such an extraordinary remedy." *Singh*, 185

F. Supp. 3d at 17. Indeed, without any factual support, Plaintiff only concludes that its First Amendment interests "are being impaired." PI Mem. (ECF No. 2-1) at 24. As such, it has failed its "task to spell out [its] arguments squarely and distinctly." *Raines*, 424 F. Supp. 2d at 66 n.3 (cleaned up). Indeed, nothing in Plaintiff's filings supports that factual conclusion. The Complaint alleges impacts on Plaintiff's staffing, projects, and partners. Compl. (ECF No. 1) ¶¶ 62–70. The relevant portion of Debra Waldron's declaration appears to be a carbon copy of the Complaint. Waldron Decl. (ECF No. 2-2) ¶¶ 40-46. And Mark Del Monte discusses irreparable harm in terms of the impact on the organization's finances and staff. Del Monte Decl. (ECF No. 2-3) ¶¶ 11–18. Plaintiff does not show that its advocacy is in any way impaired by the grant terminations. Plaintiff does not allege that any of the staffers whose termination is allegedly anticipated are engaged in advocacy or in any work unrelated to the programs for which the grants were awarded. In short, Plaintiff has failed to establish any harm, let alone irreparable harm, to its First Amendment interests. *See Planned Parenthood of Greater New York*, 2025 WL 2840318, at *9 n.6 (discussing the difference between "injury-in-fact standing" and the "irreparable harm inquiry," whereby "a plaintiff may satisfy standing requirements without meeting the imminent, irreparable harm requirement to obtain a TRO").

The harm that Plaintiff does allege—diminishment of funding—is not irreparable because it constitutes the very sort of economic harm that is not considered irreparable for purposes of obtaining preliminary relief: "It is well settled that economic loss does not, in and of itself, constitute irreparable harm." *John Doe Co. v. CFPB*, 849 F.3d 1129, 1134 (D.C. Cir. 2017) (citation modified); *see also Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the U.S.*, 840 F. Supp. 2d 327, 335 (D.D.C. 2012) ("The first hurdle Plaintiffs face is that the harms they identify are economic in nature and therefore not generally irreparable."). The essence of Plaintiff's claims

is the termination of several grants. But "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a" preliminary injunction "are not enough" to show irreparable harm. *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958).

Moreover, Plaintiff fails to allege facts that show that the alleged financial loss to Plaintiff from the cancelation of the grants is material to its continued operations. According to Plaintiff's audited financials for the year ended June 30, 2025, Plaintiff's total revenues amounted to over $136 million, including membership dues, contributions and grants, advertising, royalties, subscriptions, continuing education and other income streams. Ex. 3, Am. Academy of Pediatrics Financial Statements (attached hereto) at 6. Plaintiff's assets for the same period totaled over $177 million, including over $100 million in investments. *Id*. at 5. By contrast, the loss of "nearly $12 million," PI Mem. (ECF No. 2-1) at 3, does not suggest the kind of loss that "threatens the very existence of the movant's business." *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). Indeed, Plaintiff does not "express concern about the ongoing existence of [the] organization[]." *Urban Sustainability Directors Network v. Dep't of Agriculture*, Civ. A. No. 25-1775 (BAH), 2025 WL 237428, at *37 (D.D.C. Aug. 14, 2025). And the funds not been "otherwise obligated." *Id*.; *see also* Legier Decl. ¶ 16; Baugh Decl. ¶ 16; *Wisc. Gas Co.*, 758 F.2d at 674.

Instead, Plaintiff argues only that it faces irreparable harm because it must lay off "approximately" ten percent of its "full time employees." PI Mem. (ECF No. 2-1) at 24. Such layoffs are hardly the kind of economic loss that "threatens the very existence" of Plaintiff's business. *Wis. Gas Co*., 758 F.2d at 674. A ten percent loss of staff, hard though it may be for each individual, is insufficient to establish irreparable harm to the organization. *See Nat'l Min.*

*Ass'n v. Jackson*, 768 F. Supp. 2d 34, 52 (D.D.C. 2011) (laying off five of twenty-eight employees, or eighteen percent, is insufficient to establish irreparable harm).

Plaintiff also argues that it might face certain financial losses that are not recoverable like vacation pay and unemployment insurance. *See* Del Monte Decl. ¶¶ 16–17. These financial losses are treated like any other financial loss when assessing irreparable harm. *Davis v. Billington*, 76 F. Supp. 3d 59, 66 (D.D.C. 2014) ("The Court is not unsympathetic to the fact that the plaintiff may never recover the loss of income associated with his allegedly unlawful termination, which are not insignificant.").

The remaining alleged harms are speculative at best and are comprised of "bare allegations." *Wis. Gas Co.*, 758 F.2 at 674. This includes Plaintiff's allegations regarding alleged reputational harms. Plaintiff's own testimony contradicts its conclusion that it suffered reputational harms. *See* Waldon Decl. ¶ 42 ("AAP received outreach from many partners and beneficiaries of our work noting their disappointment in the terminations, emphasizing the importance of the discontinued projects, and expressing hopes that the awards would be reinstated."). In any event, such reputational harm is insufficient to show an irreparable injury. *See, e.g.*, *Storch v. Hegseth*, Civ. A. No 25-0415 (ACR), 2025 WL 2758238, at *8 (D.D.C. Sept. 24, 2025) (no irreparable injury where Plaintiff asserted reputational harms from termination).

Finally, Plaintiff speculates that "children's lives will be lost as a result of the terminations." Compl. (ECF No. 1) ¶ 70; Waldron Decl. (ECF No. 2-2) ¶ 46 (same); PI Mem. (ECF No. 2-1) at 25 ("Critical information about the prevention of sudden unexpected infant death syndrome will not be adequately publicized, raising the specter of avoidable infant deaths."). Plaintiff assumes, without any demonstrated basis, that unhindered, each of its grants would result in significant measurable health improvements for children. Plainly, such success is not

guaranteed.  By assuming the best-case results for its studies, Plaintiff has articulated at most "a *possibility* of irreparable injury—too speculative to sustain plaintiff's burden."  *Pro. Plant Growers Ass'n v. Dep't of Agric., Animal & Plant Health Inspection Serv.*, 879 F. Supp. 130, 131 (D.D.C. 1995).  Indeed, speculation about scientific progress generally is insufficient to overcome the Government's interest in controlling the public fisc.  In *APHA*, where significantly more scientific resources were at stake, the majority of the Supreme Court stayed an injunction that had vacated the government's termination of various research-related grants and was not persuaded by Justice Jackson's argument in dissent—which is similar to Plaintiff's argument here—that "scientific progress itself hangs in the balance—along with the lives that progress saves."  *APHA*, 145 S. Ct. at 2676.

## III.    The Balance of the Equities and the Public Interest Weigh Against Granting Preliminary Relief.

The third and fourth requirements for issuance of a preliminary injunction—the balance of harms and whether the requested injunction will disserve the public interest—"merge when the Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  These factors tilt decisively against granting a preliminary injunction here.  *See Kim v. FINRA*, 698 F. Supp. 3d 147, 172 (D.D.C. 2023) ("[A] court can deny preliminary injunctive relief solely on the balance of equities and public interest factors even in cases, like this, involving constitutional claims."), appeal dismissed, No. 23-7136, 2025 WL 313965 (D.C. Cir. Jan. 27, 2025).  Granting a preliminary injunction would disrupt the Department's review of existing grants, which Plaintiff here does not challenge.  The public has an interest in permitting the Department to take decisive action when it comes to setting its policy priorities.  Entering any sort of preliminary relief would displace and frustrate the Executive's decision about how to best address those issues.  *Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985).  Moreover, the government will likely be unable to recover

the grant funds once they are disbursed because Plaintiff has not "promised to return withdrawn funds should its grant termination be reinstated." *California*, 604 U.S. at 652.  As discussed above, Plaintiff will not suffer irreparable harm from the denial of its request for preliminary relief because Plaintiff has not shown that its harm could not otherwise be remediated later.

## IV.    <u>Any Preliminary Injunction Should Be Stayed.</u>

To the extent the Court issues any injunctive relief, Defendants respectfully request that such relief be stayed pending the disposition of any appeal that is authorized by the Solicitor General, or, at a minimum, administratively stayed for a period of seven days to allow the United States to seek an emergency, expedited stay from the Court of Appeals if an appeal is authorized.

## V.    <u>The Court Should Order that Plaintiffs Post a Bond as a Condition of Preliminary Relief.</u>

Defendants also respectfully request that any injunctive relief be accompanied by a bond. "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  The D.C. Circuit recently clarified that "injunction bonds are generally required."  *NTEU v. Trump*, No. 25-5157, 2025 WL 1441563, at *3 n.4 (D.C. Cir. May 16, 2025), *reh'g en banc denied* (July 16, 2025).  A bond is appropriate here given that the requested preliminary relief would potentially require the Executive to spend money and resources that may not be recouped once distributed and employed.

\*    \*    \*

## CONCLUSION

For these reasons, Defendants respectfully request that the Court deny Plaintiff's motion for temporary restraining order or, in the alternative, preliminary injunction (ECF No. 2).

Dated: December 31, 2025          Respectfully submitted,

                                  JEANINE FERRIS PIRRO
                                  United States Attorney


                                  By:  _____ */s/ Dimitar P. Georgiev* _____
                                       DIMITAR P. GEORGIEV, D.C. Bar # 1735756
                                       BRIAN J. LEVY
                                       Assistant United States Attorneys
                                       601 D Street, NW
                                       Washington, DC 20530
                                       (202) 252 – 2500 (main)

                                  *Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN ACADEMY OF PEDIATRICS,

               Plaintiff,

      v.

DEPARTMENT OF HEALTH AND HUMAN
SERVICES, et al.,

               Defendants.

Civil Action No. 25-4505 (BAH)

**[PROPOSED] ORDER**

UPON CONSIDERATION of Plaintiff's motion for a temporary restraining order or, in the alternative, preliminary injunction, Defendants' opposition, and the entire record herein, it is hereby

ORDERED that Plaintiff's motion is DENIED.


SO ORDERED:


_____

Date

_____

BERYL A. HOWELL
United States District Judge